IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANIEL OLIVER, | CIVIL NO. 20-00145 WRP |
| Plaintiff, | **ORDER ON POST-TRIAL MOTIONS** |
| vs. | |
| SCOTT MERLO, ET AL., | |
| Defendants. | |

## <u>ORDER ON POST-TRIAL MOTIONS</u>

Before the Court are the following post-trial motions: (1) Plaintiff's Motion for a Preliminary Injunction, Restraining Order, and the Appointment of a Receiver, ECF No. 131; (2) Plaintiff's Amended Motion for a Preliminary Injunction, Restraining Order, the Appointment of a Receiver, and an Order Directing the Turnover of Assets, ECF No. 134; (3) Plaintiff's Motion for and [sic] Award of Prejudgment Interest and Attorney's Fees, ECF No. 141; (4) Defendants' Motion to Strike Special Verdict Equitable Awards, ECF No. 142; and (5) Defendants' Motion for Remittitur, ECF Nos. 144, 145. Each motion is opposed, <u>see</u> ECF Nos. 143, 149, 150, 151, and with the exception of Plaintiff's request for prejudgment interest, the parties have filed a reply in support of their motions, <u>see</u>

ECF Nos. 147, 148, 152, 153.  The Court held a hearing on these motions on July 28, 2022.  See ECF No. 155.

At that hearing, and pursuant to Federal Rule of Civil Procedure 59(d), the Court raised certain issues that were not raised in Defendants' motions, specifically whether there was a legally sufficient evidentiary basis for certain of the jury's damage awards (as to Plaintiff's claims for conversion, breach of the duty of good faith and fair dealing, and fraud) that would not be duplicative of the jury's award for contract damages, and if not, the appropriate remedy.  See ECF No. 155, 156.  The Court therefore requested limited supplemental briefing from the parties on these topics.  See ECF No. 156.  The parties filed their supplemental briefs on August 8, 2022.  See ECF Nos. 157, 158.

Based on the parties' filings and counsel's arguments at the hearing, and for the reasons stated below, Plaintiff's post-trial motions are DENIED and Defendants' post-trial motions are GRANTED IN PART with regard to their request for remittitur of compensatory damages in the amount of $1,180,000, or alternatively a new trial on damages, but are otherwise DENIED.

BACKGROUND

This dispute between Plaintiff Daniel Oliver and Defendants Scott Merlo and his company, WOFR LLC, stems from their work together on a website for vacation rentals in Hawai'i.  Defendants conceptualized the idea of the online

vacation rental website and engaged Plaintiff to program, host, and maintain the website. According to Plaintiff, the parties entered into an agreement whereby he would receive 10% of the net profits from the website, and 10% of the purchase price for the website in the event it was sold; however, Defendants significantly and intentionally underpaid Plaintiff. According to the Defendants, there were no such agreements, Plaintiff was fairly compensated, and even if there were any such agreements, Plaintiff breached the agreements through his inadequate performance.

Plaintiff brought claims against Defendants for: (1) breach of contract; (2) fraud in the inducement / misrepresentation; (3) breach of good faith and fair dealing; (4) unjust enrichment; and (5) conversion. Defendants, in turn, brought counterclaims for: (1) breach of contract; (2) fraud in the inducement / misrepresentation; and (3) unjust enrichment.

Throughout the four-day, jury trial, Plaintiff and Defendant Merlo testified, as did Plaintiff's expert witness, Ted Carnevale, who offered testimony regarding the definition of net profits according to generally accepted accounting principles. Documentary evidence admitted at trial focused on the parties' email correspondence and Defendants' tax returns.

The jury ultimately ruled in Plaintiff's favor on all of his claims, and against Defendants on all of their claims. See ECF No. 130. The jury awarded damages to Plaintiff as follows:

| Question | Claim(s) | Amount |
|:---:|:---:|:---|
| 5 | Breach of Contract<br>(Net Profits) | $435,088 |
| 6 | Breach of Contract<br>(Sale of Website) | $350,000 |
| 13 | Unjust Enrichment, Conversion, and/or Bad Faith<br>(Net Profits) | $295,000 |
| 14 | Unjust Enrichment, Conversion, and/or Bad Faith<br>(Sale of Website) | $295,000 |
| 16 | Fraud | $590,000 |
| 18 | Punitive Damages | $1,080,000 |
| **TOTAL DAMAGES** | | **$3,045,088** |

After Plaintiff filed his first post-trial motion, the Court directed the parties to meet and confer regarding whether judgment should be entered based on the verdict or whether, in light of equitable claims/defenses in the action or for other reasons, judgment should not yet be entered and any proposed post-trial briefing schedule. See ECF No. 133.  The parties' proposed a briefing schedule, which the Court adopted, and the motions addressed here followed.  See ECF Nos. 135, 138.

Defendants' two post-trial motions relate exclusively to the damages the jury awarded.  See ECF Nos. 142, 144.  One of Plaintiff's post-trial motions focuses on ensuring he will be able to collect the damages the jury awarded, seeking an asset freeze, appointment of a receiver, and transfer of assets to the receiver.  See ECF Nos. 131, 134.  In his other post-trial motion, Plaintiff seeks

prejudgment interest.  See ECF No. 141.  Because Defendants' post-trial motions

could impact the amount of the judgment, those are addressed first.

DISCUSSION

## I. Defendants' Post-Trial Motions

Defendants filed two post-trial motions.  See ECF No. 142, 144.

Defendants first move to strike what they refer to as the "equitable awards," and

also ask the Court to require Plaintiff to elect between contract and fraud damages.

See ECF No. 142.  Defendants also move for remittitur of certain contract damages

and punitive damages—and again repeat the arguments that the "equitable awards"

should be stricken and regarding election of remedies.  See ECF No. 144.[1]

Most of Defendants' arguments pertaining to improper damages are

best analyzed as a request for remittitur, or alternatively a new trial.[2]  Rule 59

---

[1] Defendants have *not* filed any motion asking the Court to rule on its
equitable defense of waiver.  See Wavecom Sols. Corp. v. Verizon Hawaii Int'l
Inc., 2012 WL 13026683, at *10 (D. Haw. Aug. 23, 2012) ("Waiver is an equitable
defense, defined as an 'intentional relinquishment of a known right, a voluntary
relinquishment of rights, and the relinquishment or refusal to use a right.'")
(quoting Coon v. City and County of Honolulu, 47 P.3d 348, 376 (Haw. 2002)).
The Court therefore concludes Defendants have either waived this defense or have
no objection to the Court adopting the jury's advisory findings of no waiver.  See
ECF No. 124 at 50  (Instruction No. 45).

[2] For example, Defendants' first motion (related to "striking" the
equitable awards and requiring election of remedies between contract and fraud
damages) does not make clear under what Federal Rule it is brought.  But because
Defendants only moved at trial under Rule 50(a) on the basis that there was
insufficient evidence of pecuniary loss as to Plaintiff's fraud claim, and there is no

5

governs motions for a new trial.  See Fed. R. Civ. P. 59.  A court may grant a new

trial "on all or some of the issues . . . after a jury trial, for any reason for which a

new trial has heretofore been granted in an action at law in federal court."  Fed. R.

Civ. P. 59(a)(1)(A).  "The authority to grant a new trial . . . is confided almost

entirely to the exercise of discretion on the part of the trial court."  Allied Chem.

Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).  "[E]ven if substantial evidence

supports the jury's verdict, a trial court may grant a new trial if the verdict is

contrary to the clear weight of the evidence, or is based upon evidence which is

false, or to prevent, in the sound discretion of the trial court, a miscarriage of

justice."  Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814,

819 (9th Cir. 2001) (citation omitted).  Likewise, a new trial is warranted when "it

is quite clear that the jury has reached a seriously erroneous result."  Oracle Corp.

v. SAP AG, 765 F.3d 1081, 1093 (9th Cir. 2014) (citation omitted).  But the court

"may not grant a new trial simply because it would have arrived at a different

verdict."  Silver Sage, 251 F.3d at 819.

　　　　At issue here, a new trial may also be granted if "the damages are

excessive."  Claiborne v. Blauser, 934 F.3d 885, 894 (9th Cir. 2019) (citation

omitted).  In determining whether damages are excessive, the court "afford[s] great

deference to a jury's award of damages and will uphold the award unless it is

---

mention of Rule 50 in either motion, the Court presumes Rule 50 is not at issue
here.

clearly not supported by the evidence or only based on speculation or guesswork."
Williams v. Gaye, 895 F.3d 1106, 1128 (9th Cir. 2018) (citations omitted).  If
damages are excessive, the court may either grant a new trial or "deny the motion
conditional upon the prevailing party accepting a remittitur"—that is, a reduction
in the amount of damages.  Fenner v. Dependable Trucking Co., 716 F.2d 598, 603
(9th Cir. 1983).  "A remittitur must reflect the maximum amount sustainable by the
proof."  Oracle Corp., 765 F.3d at 1094 (citation omitted).

Where, as here, damages are awarded for state law claims, courts have
noted that state law governs whether those damages are excessive.  See Mueller v.
Dep't of Pub. Safety, 2022 WL 980696, at *2 (D. Haw. Mar. 31, 2022) (citing
Gasperini v. Ctr. for Humanities, 518 U.S. 415, 426-31 (1996)); but see 11 Fed.
Prac. & Proc. Civ. § 2802 ("[A]lthough federal law controls on questions involving
new trials, courts sitting in diversity may look to state decisions for *general
guidance* . . . on questions such as the excessiveness of the verdict.") (emphasis
added).  Like federal law, Hawai'i law recognizes remittitur as an appropriate
remedy when a damage award is excessive.  See Miller v. Hartford Life Ins. Co.,
126 Haw. 165, 179, 268 P.3d 418, 432 (2011) ("[W]hen the trial court believes that
the judgment for damages is excessive and against the weight of the evidence, it
may order a remittitur and alternatively direct a new trial if the plaintiff refuses the

remittitur.") (citation omitted).[3]  The Hawai'i Supreme Court has set forth the

following test for evaluating whether a jury's award of damages is excessive:

> [A] finding of an amount of damages is so much within the exclusive
> province of the jury that it will not be disturbed on appellate review
> unless palpably not supported by the evidence, or so excessive and
> outrageous when considered with the circumstances of the case as to
> demonstrate that the jury in assessing damages acted against rules of
> law or suffered their passions or prejudices to mislead them.

Quedding v. Arisumi Bros., Inc., 66 Haw. 335, 339, 661 P.2d 706, 709-10 (1983)

(citation omitted).  That said, even when the Ninth Circuit has assessed a claim that

there is insufficient evidence to support a damage award in a diversity case, it has

noted the jury's findings must be upheld "unless the amount is grossly excessive or

monstrous, clearly not supported by the evidence, or based only on speculation or

guesswork."  Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1104,

1107 (9th Cir. 2001).

With this backdrop in mind, the Court turns to the specific arguments

Defendants have raised—or the Court has directed the parties to address pursuant

to Rule 59(d)—regarding the damages awarded here.  The arguments raised across

Defendants' motions are addressed in the order in which they appear in the verdict

form.

---

[3] Hawai'i courts have recognized that Hawai'i Rule of Civil Procedure 59, regarding remittitur, is analogous to Federal Rule of Civil Procedure 59, and cited federal authorities when analyzing it.  See Au v. Kelly, 2 Haw. App. 534, 536-37, 634 P.2d 619, 621 (1981).

## A. Damages for Breach of Contract

Defendants first ask the Court to remit the amount of contract damages the jury awarded in connection with the breach related to the sale of the website—from $350,000 to $190,000.  Defendants contend that, because the website was sold for $5.5 million gross, the jury improperly took 10% of that gross amount (or $550,000), subtracted the $200,000 Defendants previously paid Plaintiff, and awarded Plaintiff $350,000.  What the jury should have done, according to Defendants, was take 10% of the net profit *after tax* (which they contend was $3.9 million), or $390,000, and then subtract the $200,000 payment, and thus award only $190,000.  See ECF No. 144-1 at 1-2.  In support of this argument, Defendants cite an email where Defendant Merlo stated: "But one thing is, always remember, when I say net profit, that means net profit after tax.  If I do sell, yes, I will give you 10% of the after tax net profit."  ECF No. 144-4 at 10. Defendants also contend Defendant Merlo testified that the after tax net profit for the sale of the website was $3.9 million.  See ECF No. 144-1 at 2.[4]

Again, "[g]enerally, a jury's award of damages is entitled to great deference, and should be upheld unless it is clearly not supported by the evidence or only based on speculation or guesswork."  In re First All. Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (citation omitted).  Based on this standard, Defendants

---

[4] Neither party attached transcripts to support their contentions regarding what was testified to at trial.

have not shown the Court can reduce the contract damages the jury awarded for the sale of the website.  On the verdict form (that Defendants did not object to), the jury was asked and answered that there was an agreement for "ten percent of the purchase price for the website"—without reference to an after-tax calculation.  <u>See</u> ECF No. 130 at 1-2 (Questions 2 & 4).  The jury could have concluded Plaintiff was entitled to 10% of the gross proceeds (i.e., following Plaintiff's counsel's reasoning in closing that it should award $350,000—considering 10% of the full $5.5 million and subtracting the $200,000 previously paid).  Or, the jury could have awarded that amount based on a determination that Defendant Merlo's testimony was not credible and that, based on other evidence admitted at trial (e.g., reflecting Defendant Merlo receiving member distributions exceeding $5.5 million in the relevant year), that Defendants had not provided credible evidence as to an accurate after-tax amount.  Neither explanation for the jury's award would be unreasonable, particularly when considering the instruction the jury was provided on contract damages.  <u>See</u> ECF No. 124 at 35 (Instruction No. 31).

Based on the foregoing, the Court DENIES Defendants' motion to reduce the contract damages the jury awarded for the sale of the website.

## B. Damages for Unjust Enrichment, Conversion, and Bad Faith

Defendants next ask the Court to "strike" the $590,000 the jury

awarded Plaintiff across Questions 13 and 14, which referenced Plaintiff's claims

for: unjust enrichment, conversion, and/or breach of the duty of good faith and fair

dealing.  Defendants contend that, because Plaintiff recovered full damages on his

breach of contract claims, he is not entitled to the damages the jury awarded,

collectively, for Plaintiff's claims for unjust enrichment, conversion, and/or bad

faith.

As referenced briefly above, under Rule 59(d), the Court may raise

issues not explicitly raised in a motion for new trial that would otherwise justify

granting a new trial as follows:

> (d) New Trial on the Court's Initiative or for Reasons Not in the
> Motion.  No later than 28 days after the entry of judgment, the court,
> on its own, may order a new trial for any reason that would justify
> granting one on a party's motion.  After giving the parties notice and
> an opportunity to be heard, the court may grant a timely motion for a
> new trial for a reason not stated in the motion. In either event, the
> court must specify the reasons in its order.

Fed. R. Civ. P. 59(d); see also Experience Hendrix L.L.C. v. Hendrixlicensing.com

Ltd, 762 F.3d 829, 842 (9th Cir. 2014) ("The district court also is not limited to the

grounds a party asserts to justify a new trial, but may sua sponte raise its own

concerns about the damages verdict.").  In any context considering a Rule 59

motion for a new trial, the district court "is not required to view the trial evidence

in the light most favorable to the verdict.  Instead, the district court can weigh the evidence and assess the credibility of the witnesses."  Id.

Defendants' motions seeking to "strike" the jury's awards in Questions 13 and 14 focused only on the fact that Plaintiff could not recover in equity based on the jury's conclusions that contracts were formed on the subject matters at issue.  That argument is not persuasive—most obviously because the awards in Questions 13 and 14 included both the non-equitable claims of conversion and bad faith and the equitable claim of unjust enrichment.[5]

Defendants did make passing reference to the fact that the awards under Questions 13 and 14 are "duplicative" based on the contract damages the jury awarded in Questions 5 and 6.  See ECF No. 142-1 at 1, 8 n.2.  But this argument was not well-developed.  For example, in a footnote Defendants argued: "The instructions for questions #13 and #14 were clearly erroneous as they were

---

[5] There is no dispute Plaintiff *cannot* recover for unjust enrichment—which is equitable—based on the jury's answers to Questions 1 and 2, finding a contract on each subject matter.  See Porter v. Hu, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Ct. App. 2007); Taylor v. Bartolucci, 2020 WL 929852, at *8 (D. Haw. Feb. 26, 2020) ("[E]quitable remedies like . . . unjust enrichment are not available when an express contract exists between the parties concerning the same subject matter.") (citation omitted).  But Defendants' motions offered no argument or authority in support of their contention that Plaintiff may not recover legal damages for conversion (which sounds in tort), see Brooks v. Dana Nance & Co., 113 Haw. 406, 415, 153 P.3d 1091, 1100 (2007), or for breach of the duty of good faith and fair dealing (which, here, sounds in contract), see Lynch v. Fed. Nat'l Mortg. Ass'n, 2016 WL 6776283, at *9 (D. Haw. Nov. 15, 2016); Marisco, Ltd. v. GL Eng'g & Constr. Pte., Ltd., 2020 WL 3492572, at *7 (D. Haw. June 26, 2020).

duplicative of the damages awarded in questions #5 and #6." ECF No. 142-1 at 8

n.2. Plaintiff argues (and Defendant does not specifically dispute) that Defendants

waived any argument that there was an error in the *form* of the verdict. But even

assuming no waiver, those questions were not *necessarily* duplicative as a matter

of law. For example, the instruction for damages for conversion permitted

Plaintiff to recover *a different type* of damages as compared to the instruction for

contract damages.[6]

The problem, instead, is that the Court was not aware of any evidence

Plaintiff could point to in arguing that the jury's awards under Questions 13 and 14

were anything but speculative and based on guesswork, i.e., even if conversion and

bad faith permitted recovery of a different type of damages that would not

duplicate contract damages, there was no evidence to support those damages here.

See ECF No. 124 at 42 (Instruction No. 38 stating: "Mr Oliver does not have to

prove the exact amount of damages that will provide reasonable compensation for

the harm. *You must not speculate or guess in awarding damages*.")(emphasis

added). For example, in closing, Plaintiff's counsel represented the total damages

---

[6] See ECF No. 124 at 42 (Instruction No. 38) ("The following are the
specific items of damages claimed by Mr. Oliver: 1. An amount representing the
difference between what Mr. Oliver was paid by Mr. Merlo and his company, and
the amount Mr. Oliver claims to be owed for the services he performed; *and 2.
Reasonable compensation for the time and money spent by Mr. Oliver in
attempting to recover the unpaid portion of net profit and/or purchase price Mr.
Oliver claims he was entitled to*.") (emphasis added).

he was seeking across breach of contract, unjust enrichment, breach of good faith, and/or conversion was $785,088:

> Total underpayment $785,088.  That's what we contend on our breach of contract, unjust enrichment, conversion, breach of good faith and fair dealing claims Mr. Oliver is owed.  And on top of that, he's had to fight for this for a very long time.[7]

Although that last sentence could be a nod to the additional type of damages Plaintiff could recover under conversion, it was unclear to the Court how the jury came up with the amounts in Questions 13 and 14 based on evidence admitted at trial—even if those claims did require proof of different conduct.  Cf. Lima v. Deutsche Bank Nat'l Tr. Co., 149 Haw. 457, 465, 494 P.3d 1190, 1198 (2021) ("This court has noted that where a tort claim requires a plaintiff to separately establish damages, the plaintiff cannot simply infer damages based upon the alleged tort — i.e., nominal damages.") (citation omitted).

Nor did it seem likely, based on the evidence at trial and counsel's arguments in closing, that the jury arrived at a total award and allocated it across the different claims, such that the Court should not look behind that allocation. See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 791 F.2d 1356, 1366 (9th Cir. 1986) ("Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated

---

[7] This mirrored Plaintiff's Final Pretrial Conference Statement, which requested "$796,593.00 plus interest, together with the costs of disbursements of this action" for each of his claims.  See ECF No. 89.

verdict which is nevertheless reasonable in light of the totality of the evidence."). Instead, the Court recalled only evidence that Plaintiff was damaged in the amount of underpayment. This would mean the awards in Questions 13 and 14 were improperly based on speculation and guesswork. See id. ("If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial."). The awards in Questions 13 and 14 were at least duplicative—and thus also improper under Hawai'i law. See Porter, 116 Haw. at 59, 169 P.3d at 1011 ("a non-client may sue an attorney under either a negligence or contract theory if the non-client is entitled to a standard of care from the attorney, but may not recover under both theories for the same damages") (discussing Blair v. Ing, 95 Haw. 247, 259 & n.10, 21 P.3d 452, 464 & n.10 (2001) ("Under no circumstances, however, is a plaintiff entitled to double recovery where both legal theories are advanced and proved.")); see also Ace Quality Farm Prod., LLC v. Hanh, 136 Haw. 373, 362 P.3d 806 (Ct. App. 2015) (unpublished) ("a double or duplicative recovery for a single injury is invalid").

In a case analogous to the situation here, where a corporate officer testified to the total amount of loss, there was no other evidence on the issue of damages, and counsel reiterated that amount of loss in closing, a district court ordered remittitur as to what the jury awarded *beyond* that amount, or alternatively

a new trial, reasoning the jury had no legally sufficient evidentiary basis to find damages greater than that amount.  See  Weyerhaeuser Co. v. Accurate Recycling Corp., 247 F.R.D. 636, 637-38 (W.D. Wash. 2008).

For these reasons, the Court directed Plaintiff to cite the Court to evidence admitted at trial that could substantiate the jury's awards in Questions 13 and 14.  At the hearing, Plaintiff's counsel suggested that, because the jury was made aware he was representing Plaintiff on a contingency basis, and because the jury's $590,000 award across Questions 13 and 14 was around thirty percent of the total compensatory damages awarded ($1,965,088, i.e., excluding punitive damages), the jury may have been attempting to approximate Plaintiff's counsel's contingency fee.  But aside from a reference to representation on a contingency basis, there was no evidence admitted regarding what percentage of any award Plaintiff's counsel would be entitled, nor what expenses might be deducted either before or after that percentage was calculated.   The Court finds that to accept this argument as sufficient to support the jury's award would be to improperly permit an award to stand based on pure speculation and guesswork.

In his supplemental filing, Plaintiff argues $200,000 of the award under Questions 13 and 14 is supported by the evidence because Defendant Merlo testified he paid Plaintiff that amount as a bonus for the sale of the site, not pursuant to any agreement whereby Plaintiff would be entitled to a percentage of

the sale price.  See ECF No. 158 at 1-3.  According to Plaintiff, he was entitled to 10% of the net profits and 10% of the sale, i.e., $985,088, and because the $200,000 that Defendants paid him was a bonus unrelated to the parties' agreements, that amount should *not* have been subtracted.  See id.  The Court is similarly not persuaded by this argument.  Again, in this context, the Court is not required to view the trial evidence in the light most favorable to the verdict and can weigh the evidence and assess witness credibility.  Plaintiff's argument is directly contrary to his counsel's argument in closing *instructing* the jury to credit Defendants' $200,000 payment when calculating damages—stating in no uncertain terms that the sale price was $5.5 million, that Plaintiff received $200,000, and that he was therefore underpaid $350,000 as to this agreement—the exact amount the jury ultimately found.  Defendant Merlo's testimony regarding a bonus was in support of his contention that there was *no such agreement*—testimony the jury ultimately rejected in finding in favor of Plaintiff and against Defendants.  Nor can Plaintiff's argument be neatly squared with the $590,000 that the jury awarded under Questions 13 and 14.

The standard for granting a new trial based on insufficient evidence is stringent.  See Ace v. Aetna Life Ins. Co., 139 F.3d 1241, 1248 (9th Cir. 1998), as amended on reh'g (Mar. 12, 1998).  But here, the Court concludes that standard is met because Plaintiff has not shown the evidence supports a compensatory damage

award beyond $785,088.  The Court therefore GRANTS IN PART Defendants'

request under Rule 59.[8]

### C. Fraud Damages

Across both motions, Defendants raise two general arguments as to

why Plaintiff should not be entitled to recover the fraud damages the jury awarded

($590,000 in compensatory damages under Question 16, and $1,080,000 in

punitive damages under Question 18).  Defendants first argue that permitting

Plaintiff to recover contract and fraud damages would improperly permit double

recovery.  See ECF No. 142-1 at 5-6.  Defendants next argue the punitive damages

award was excessive and against the weight of the evidence, such that remittitur is

appropriate.  See ECF No. 144-1 at 4-14.

### i. Double Recovery

Defendants contend Plaintiff must elect between either contract

damages or fraud damages because allowing both would improperly allow double

recovery.  In his opposition brief, Plaintiff argued he should be permitted to

recover under both claims because Hawaiʻi law recognizes a plaintiff may proceed

simultaneously on contract and fraud claims, and that the two require proof of

different elements.  See ECF No. 150 at 6-8.  But that argument is more responsive

---

[8] The Court will address the appropriate remedy, based on this conclusion, after resolving all of the objections Defendants have raised to the jury's award.

to an argument Plaintiff cannot recover *any* damages for fraud—as a matter of

law—e.g., based on the economic loss rule.[9]  Defendants have moved to limit

Plaintiff's recovery based on a theory of double recovery, not under the economic

loss rule.  See ECF No. 142-1 at 5-6.  As one court differentiated:

> The bar on double recovery prohibits Plaintiff from recovering
> damages for its fraud *and* contract claims. [] On the other hand, the
> economic loss rule prohibits the Court from awarding tort damages for
> contractual harms. [] These are distinct concepts; one prescribes how
> *much* may be awarded while the other dictates *which type* may be
> awarded.

Simulados Software, Ltd. v. Photon Infotech Priv., Ltd., 2020 WL 109391, at *4

(N.D. Cal. Jan. 9, 2020), aff'd, 861 F. App'x 149 (9th Cir. 2021).

Defendants' argument is that, even if Plaintiff proved both his

contract and fraud claims, he ultimately suffered only one loss, and so should not

be permitted a duplicative recovery for that one loss.  Even if Hawai'i law

recognizes a plaintiff may proceed on both tort and contract claims, it also

recognizes (as noted above) that a plaintiff is not allowed a double recovery on the

same damages for such claims.  See Porter, 116 Haw. at 59, 169 P.3d at 1011; cf.

Fid. Risk Mgmt. Servs., Inc. v. Am. Home Assur. Co., 878 F.2d 385 (9th Cir.

1989) (unpublished) (concluding, under Hawai'i law, that no improper duplication

---

[9] Hawaii's economic loss rule is set forth in HRS § 663–1.2 and
provides:  "No person may recover damages, including punitive damages, in tort
for a breach of a contract in the absence of conduct that: (1) Violated a duty that is
independently recognized by principles of tort law; and (2) Transcended the breach
of the contract."

occurred where plaintiff recovered guaranteed income lost as a result of defendant's breach, and there was ample evidence of *other injuries* plaintiff sustained due to defendant's fraudulent misrepresentation, e.g., lost investments).

Hawaiʻi is not an outlier in this respect. See Teutscher v. Woodson, 835 F.3d 936, 954 (9th Cir. 2016) ("[T]he law abhors duplicative recoveries. That is to say, a plaintiff who is injured by reason of a defendant's behavior is . . . entitled to be made whole—not to be enriched.") (citation omitted).  For example, courts applying California law recognize that a plaintiff is not allowed a double recovery in contract and fraud—even if those represent distinct claims and harms—where there is only evidence of one loss.  See Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1032 (9th Cir. 1999) (applying California law) (noting plaintiff had suffered "two separate harms"—fraudulent inducement and breach of the agreement—but suffered only one loss "and therefore could not have received separate compensatory damage awards for its fraud claim and for its contract claim"); Simulados Software, 2020 WL 109391, at *3 (applying California law) ("while Plaintiff suffered two harms, breach of contract and fraud, it suffered only one loss—the loss of profits and money paid for Defendant's services").

In closing here, Plaintiff's counsel argued the total underpayment he was owed on the breach of contract claims was $785,088.  Later in closing, when

20

discussing fraud and punitive damages, Plaintiff's counsel again totaled his client's loss at $785,000, stating Defendant Merlo *stole* that amount from Plaintiff. In his opposition, Plaintiff did not point to any evidence he suffered more than one loss— that being the underpayment for the net profits and sale of the website. And while the jury here did find a different amount under fraud ($590,000) as compared to contract damages ($785,088), Plaintiff's opposition did not point to any evidence or offer any argument as to how this amounted to a separate loss the jury may have found Plaintiff suffered. To the contrary, even in post-trial briefing, Plaintiff's counsel argued his client suffered a single loss, i.e., the fraud damages are equivalent to the breach of contract ones. See ECF No. 151 at 7 (arguing against remittitur by noting that "Defendants defrauded a hard-working man and father of six out of nearly $800,000").

Even though the issue of double recovery was squarely raised in Defendants' post-trial motions, the Court gave Plaintiff another opportunity to direct the Court to portions of the record that would support the jury's additional $590,000 award as non-duplicative and supported by the evidence. See ECF No. 156. In response, Plaintiff again argues $200,000 of that award is supported by Defendant Merlo's testimony regarding the bonus he paid Plaintiff. But again, the Court does not find this argument persuasive given the testimony was based on Defendant Merlo's contention there was no agreement regarding Plaintiff's

21

entitlement to sale proceeds, and particularly considering counsel's arguments during and after trial that Plaintiff's total loss for the fraud claim did *not* include this additional $200,000, <u>see</u> ECF No. 151 at 7, where fraud damages are measured in pecuniary loss and all parties agree Plaintiff received that amount, <u>see</u> <u>Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.</u>, 116 Haw. 277, 292, 172 P.3d 1021, 1036 (2007) ("The aim of compensation is to put the plaintiff in the position he or she would have been had he or she not been defrauded.") (citation omitted).  The Court therefore concludes Plaintiff's damages must be capped at $785,088 in order to limit the judgment to non-duplicative compensatory damages that are supported by the evidence admitted at trial.[10]

### ii. Punitive Damages

Defendants next appear to argue that the Court should remit the punitive damages, or order a new trial, because the jury's conclusions as to Plaintiff's entitlement to punitive damages were against the weight of the evidence, and the punitive damages award violates due process.

---

[10] Again, the Court will address the appropriate remedy, based on this conclusion, after resolving all objections Defendants have raised to the jury's award.  Relevant here, and as discussed in more detail below, although Defendants' initial motions referenced Plaintiff being required to "elect his remedies" as between contract and fraud damages, ECF No. 142-1 at 6, they cited no case law in support of the election of remedies doctrine—focusing only on the rule against double recovery for a single loss.  The Court will therefore address the case law that Defendants did cite regarding election of remedies—in their supplemental briefing—when addressing the appropriate remedy below.

22

When assessing an award of punitive damages under state law in federal court, the Supreme Court has explained:

> In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law. Federal law, however, will control on those issues involving the proper review of the jury award by a federal district court and court of appeals.
>
> In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.

Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278–79 (1989) (citations omitted).

### a. Weight of the Evidence

Under Hawaiʻi law, "[t]he proper measurement of punitive damages should be the degree of malice, oppression, or gross negligence which forms the basis for the award and the amount of money required to punish the defendant." Kang v. Harrington, 59 Haw. 652, 663, 587 P.2d 285, 293 (1978) (citation and alterations omitted); see also Ditto v McCurdy, 86 Haw. 84, 92, 947 P.2d 952, 960 (1997) ("the jury needed only find *either* willful misconduct or entire want of care, to wit, gross negligence, in order to properly award punitive damages"); Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 130, 920 P.2d 334, 344 (1996) ("Hawaiʻi allows punitive damages for wil[l]ful, malicious, wanton or aggravated

23

wrongs where a defendant has acted with a reckless indifference to the rights of another.") (citations omitted).

Defendants argue punitive damages should not have been imposed here because Plaintiff did not establish at trial that Defendant Merlo "acted with *mens rea*," ECF No. 144-1 at 6, in other words, there was no evidence of intentional wrongdoing and the testimony at most established "a mutual mistake regarding the terms of [the parties'] informal, oral 'agreement,'" id.  First, the Court concludes that the jury's ultimate determination on fraud was not against the clear weight of the evidence.  As noted above, in this context, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Landes Const. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987).  Based on assessing Plaintiff's testimony as compared to Defendant Merlo's, it was not against the clear weight of the evidence for the jury to conclude, by clear and convincing evidence, that Defendant Merlo made a false promise or misrepresented the amount he would pay for Plaintiff's share of the net profits and sale of the site, knowing he did not intend to pay Plaintiff that full amount (and instead, e.g., planned to take significant additional deductions that were neither disclosed to or agreed upon by Plaintiff and where the amounts of those deductions were within Defendant Merlo's sole discretion), that Defendant Merlo intended for

24

Plaintiff to rely on these promises to continue working with him and Plaintiff did rely on these promises, and that Plaintiff was harmed as a result based on the loss in money over the course of the parties' relationship.

Defendants further emphasize that Plaintiff was underperforming and, in any event, was paid something. But it was not against the clear weight of the evidence for the jury to conclude, again based on the parties' testimony and exhibits admitted, that Plaintiff was not underperforming—and being paid something does not necessarily negate that Plaintiff was repeatedly being deceived about the money he was owed. The Court therefore concludes Defendants are not entitled to a new trial based on the jury's conclusion as to Plaintiff's fraud claim.

For similar reasons, the Court concludes that the jury's conclusion that Plaintiff was entitled to punitive damages was not against the clear weight of the evidence. Courts applying Hawai'i law have consistently held that, in addition to intentional wrongdoing, conduct that is wanton, grossly negligent, and/or undertaken with reckless indifference to the rights of others can appropriately lead to punitive damages. See, e.g., Durham v. Cty. of Maui, 692 F. Supp. 2d 1256, 1262 (D. Haw. 2010); Best Place, 82 Haw. at 134, 920 P.2d at 348; Quedding v. Arisumi Bros., 66 Haw. 335, 340, 661 P.2d 706, 710 (1983). The conclusion that Defendant Merlo deceived Plaintiff about the amount he was owed, or was at least consciously indifferent to the consequences of how much Plaintiff would be

25

underpaid based on misrepresentations about what deductions Defendant Merlo was taking from Plaintiff's share and on what bases, was not against the clear weight of the evidence.

### b. Whether Punitive Damages Violate Due Process

Finally, Defendants argue the award of $1,080,000 in punitive damages violates due process.[11]  The Supreme Court has held that the Fifth Amendment's Due Process Clause prohibits punitive damages that are "grossly excessive." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).  To determine whether an award of punitive damages is unconstitutionally large, the Supreme Court has set out three "guideposts": "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418.

The first factor, reprehensibility, is the "most important indicium of the reasonableness of a punitive damages award." BMW of N. Am., Inc. v. Gore,

---

[11] Defendants frequently also contend the punitive damages awarded were excessive.  But they do not include any specific argument that the award is excessive under Hawai'i law.  See Quedding, 66 Haw. at 339, 661 P.2d at 709-10 (1983).  The Court therefore focuses on the arguments Defendants have supported with citation to authority, i.e., that the award of punitive damages violates due process, and the amount is "grossly excessive."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).

517 U.S. 559, 575 (1996).  The reprehensibility of the defendant's conduct is judged by "considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."  State Farm, 538 U.S. at 419.  Although the harm here was only economic in nature, the jury could have reasonably found that Plaintiff did have financial vulnerability based on his familial and financial status (as compared to Defendant Merlo's financial standing), and that Defendant Merlo repeatedly made false promises that he was paying Plaintiff his fair share, while in actuality he was manipulating the amount Plaintiff was purportedly owed to benefit himself financially.

The second guidepost is the ratio of punitive damages to "the actual harm inflicted on the plaintiff."  Gore, 517 U.S. at 580.  The Supreme Court has explained that it is "reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award."  State Farm, 538 U.S. at 424.  But, it has said, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  Id. at 425.  While "an award of more than four times the amount of compensatory damages might be close to the line of constitutional

27

impropriety," these ratios are "instructive" not "binding." Id.  Larger ratios are more likely to be warranted when "a particularly egregious act has resulted in only a small amount of economic damages." Id. (citation omitted).  Conversely, when "compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." Id.  In short, the punitive damages must be "reasonable and proportionate" to the harm and compensatory damages.  Id. at 426.

Here, Plaintiff contends the Court should compare the $785,088 in contract damages to the $1,080,000 in punitive damages, which is a ratio of only 1.38 to 1, and thus a single digit multiplier that is more likely to accord with due process.  See ECF No. 151 at 7.  Defendants do not argue to the contrary—saying only this is not the only factor that the Court must consider.[12]  Regardless, this guidepost supports upholding the award here, where the multiplier is not even two times the compensatory award, and where the compensatory award is not necessarily that substantial.

Third, courts must examine the "disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases." State Farm, 538 U.S. at 428 (citation omitted).  Neither party has provided the

---

[12] Because punitive damages are not available for breach of contract, it may be more appropriate to compare the jury's damages for fraud ($590,000) to the punitive award, which is a ratio of 1.83.

Court with comparable civil penalties or comparable cases.  Comparing fraud cases generally, it appears that a ratio less than two times the compensatory award can be sustained here.  For example, courts analyzing fraud claims under California law have found a multiplier of 3 to be appropriate.  See Mobile Mini, Inc. v. Khordt, 2007 WL 2109224, at *6 (E.D. Cal. July 23, 2007), report and recommendation adopted, 2007 WL 2377012 (E.D. Cal. Aug. 21, 2007) (noting, on default judgment, that "violations of common law tort duties do not easily lend themselves to a comparison with statutory penalties," but that California law typically imposes treble damages for fraudulent and bad faith conduct, such that ratios of 3 to 1 appear to be called for when intentional acts of fraud are involved); Albizu v. Strohl, 2005 WL 8176328, at *9 (E.D. Cal. Nov. 14, 2005), report and recommendation adopted as modified, 2005 WL 8176335 (E.D. Cal. Dec. 27, 2005) (finding multiplier of three was appropriate to set an example and deter others, on default judgment, where there was clear evidence of fraud but "no circumstances otherwise rendering the Defendant's conduct egregious").

Like California law, Hawai'i law permits a plaintiff to recover treble damages in some cases involving certain unfair or deceptive acts or practices.  See Haw. Rev. Stat. § 480-13(b).  And although not an example of a multiplier of three, at least one of the cases Defendants rely on elsewhere in their motions did allow a multiplier of 1.39 (similar to what the jury awarded here) where punitive

damages were awarded based on fraud under Hawaiʻi law.  See Kang v.
Harrington, 59 Haw. 652, 664, 587 P.2d 285, 294 (1978) ($2,500 punitive damages
on $1,800 general damages); see also Pro. Seminar Consultants, Inc. v. Sino Am.
Tech. Exch. Council, Inc., 727 F.2d 1470, 1473 (9th Cir. 1984) ("An award of
$200,000 in punitive damages for fraud and conversion when compared to
$120,000 compensatory damages [meaning a ratio of 1.67] is not unreasonable.");
Nachman v. Regenocyte Worldwide, Inc., 2014 WL 12788995, at *2–3 (D. Nev.
Oct. 21, 2014) (finding a multiplier of 2 appropriate, on default judgment, where
plaintiff brought claims for breach of contract and fraud).  While none of the above
cases may represent facts that are completely analogous to the evidence the jury
heard, they provide a guidepost that does not counsel in favor of reducing the
punitive damages award here.  And based on a consideration of all three factors,
the Court cannot conclude that the punitive damages award violates due process.
The Court therefore DENIES Defendants' request for remittitur or a new trial with
regard to punitive damages.

### D.  Conclusion as to Defendants' Post-Trial Motions

For the reasons stated above, the Court DENIES Defendants' post-trial motions seeking remittitur or alternatively a new trial with regard to the specific damages the jury awarded for breach of the parties' contract regarding the sale of the website and as to the jury's award of punitive damages.

However, as stated above, the Court concludes that the jury had no legally sufficient evidentiary basis to find that Plaintiff's compensatory damages exceeded $785,088.  Based on the parties' agreement that, given this conclusion, the appropriate remedy is to offer remittitur, or alternatively a new trial, the Court GRANTS IN PART Defendants' post-trial motions and orders remittitur of the compensatory damages the jury awarded in excess of $785,088 (i.e., in the amount of $1,180,000), or alternatively, grants Plaintiff leave to request a new trial on damages.

Should Plaintiff accept remittitur, the parties disagree as to the total amount of damages he may recover.  Defendants argue that, under Hawai'i law, Plaintiff must elect between his contract and fraud remedies, i.e., he may either recover $785,088 in contract damages *or* $1,670,000 in fraud damages ($590,000 compensatory plus $1,080,000 punitive).  See ECF No. 157.  According to Defendants, Plaintiff *may not* recover $785,088 in compensatory damages *and* $1,080,000 in punitive damages.  Plaintiff offers various permutations for how

31

remittitur could work here; however, each option seems to presume the Court will conclude the evidence supports compensatory damages exceeding $785,088—which it has not.  See ECF No. 158.

The Court is not convinced by Defendants' arguments regarding election of remedies.  The case law Defendants cite—for the first time in supplemental briefing—notes explicitly that the doctrine is intended to apply when two remedies are *inconsistent*.  See ECF No. 157 at 3-4 (quoting, e.g., Exotics Hawaii-Kona, Inc., 116 Haw. at 291, 172 P.3d at 1035 (2007)).  Nowhere have Defendants articulated why contract and fraud remedies here are *inconsistent*. While Defendants did make reference to the notion that Plaintiff could not recover for both breach of contract and fraud, see ECF No. 142-1 at 5, the only authority they cited discussed the doctrine—discussed in detail above—that even if a plaintiff proves multiple theories of liability (e.g., breach of contract and fraud), he may not be awarded double recovery for a single loss or harm, see id. at 5-6 (citing cases).  By failing to address why Plaintiff's contract and fraud claims are legally or factually inconsistent, Defendants have failed to demonstrate why the election of remedies doctrine dictates a certain outcome here.[13]  Nor does the Court find it

---

[13] See, e.g., Bankers Tr. Co. v. Pac. Emps. Ins. Co., 282 F.2d 106, 110–11 (9th Cir. 1960) ("The courts of many states have recognized the rule that a suit on a contract and suit for fraud in inducing the contract are two different causes of action with *separate and consistent remedies*. [] Refusing to perform the contract is a separate wrong from fraudulently inducing it.  There is nothing

appropriate to make those arguments on Defendants' behalf even if they could

have been made and supported by applicable law. [14]

Instead, the Court finds it more prudent to follow the directive from

the Ninth Circuit that "[a] remittitur must reflect the maximum amount sustainable

by the proof." Oracle Corp., 765 F.3d at 1094 (citation omitted).  Based on that

standard, the Court orders remittitur of $1,180,000 in compensatory damages,

while noting that any remittitur would not impact the award of punitive damages

---

inconsistent in the respective remedies sought for the respective wrongs allegedly
committed.") (emphasis added); Fid. Risk Mgmt. Servs., Inc. v. Am. Home Assur.
Co., 878 F.2d 385 (9th Cir. 1989) (unpublished) ("[O]ur research has not disclosed,
any indication that the Hawaiian courts disagree with the general principle that the
defrauded party to the contract . . . has the right to affirm it, retain its benefits, and
also recover damages for the fraud.") (citations omitted) (citing Eastern Star, Inc.,
S.A. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 140, 712 P.2d 1148, 1159
(1985) as permitting simultaneous actions for fraud in the inducement and breach
of contract)); see also Schroeder v. Hundley, 2021 WL 4934980, at *3 (S.D. Cal.
Aug. 9, 2021) and Schroeder v. Hundley, 2021 WL 1792544, at *8 (S.D. Cal. Mar.
15, 2021) (recognizing that plaintiffs' fraud and contract claims were *not*
inconsistent such that plaintiffs were *not* required to make an election of remedies;
making a single award for compensatory damages of contract damages to avoid
double recovery on those claims; further recognizing plaintiffs may be entitled to
additional damages based on fraud such as emotional distress and punitive
damages and ultimately awarding additional damages for emotional distress based
on fraud).

[14] For example, as the Court already noted above, Defendants did *not*
argue that Plaintiff could not recover fraud damages based on Hawaii's economic
loss rule.  For that reason, the Court disregards the arguments in Plaintiff's
supplemental brief based on that doctrine noting that the Court could not uphold
the punitive damages award here if it offers remittitur (an argument that also
presupposes Plaintiff will be required to make an election).  See ECF No. 158 at 4-
5.

given Defendants have not cited any authority to support their argument that doing so would amount to an improper additur. Cf. Schroeder, 2021 WL 4934980, at *3 (S.D. Cal. Aug. 9, 2021) (recognizing, when awarding a single compensatory award for contract and fraud claims along with additional fraud-specific damages that "the fraud and contract claims are not inconsistent such that Plaintiffs must make an election of remedies, and thus this court is obligated to grant the remedy to which Plaintiffs are entitled on each cause of action") (citations and alterations omitted); Julian-Ocampo v. Air Ambulance Network, Inc., 2001 WL 34039480, at *1, 3-4, 7 (D. Or. Dec. 13, 2001) (noting fraud claim was not inconsistent with breach of contract claim such that election of remedies did not apply; offering general remittitur of $23,900 in economic damages where jury awarded that amount twice under both contract and fraud claims, while still awarding punitive damages); Glesenkamp v. Nationwide Mut. Ins. Co., 344 F. Supp. 517, 519 (N.D. Cal. 1972) ("The fact that plaintiff alleges actual damages in her fraud claim which equal those sought and recovered under the breach of contract claim does not mean that plaintiff has suffered no actual damages by way of defendant's alleged fraud in excess of those recovered under the breach of contract claim."). Alternatively, the Court grants Plaintiff leave to request a new trial as to damages. The Court directs Plaintiff to respond to this Order within seven days informing the Court of his decision.

## II. Plaintiff's Post-Trial Motions

### A. Preliminary Injunction/Restraining Order, Receiver, and Turnover of Assets

Plaintiff moves for various relief to ensure he can collect on the judgment—which, as detailed above, will now be for a lesser amount if Plaintiff accepts remittitur.[15]  Plaintiff first moves pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction and restraining order against Defendants' future transfer of assets.  Plaintiff also asks the Court to appoint a receiver, in accordance with Federal Rule of Civil Procedure 66, and upon appointment of that receiver, to direct that certain third parties turn over frozen assets to the receiver, so as to maintain the status quo pending entry of a final judgment.  Plaintiff requests this relief because Defendant Merlo inadvertently copied Plaintiff's counsel on an exchange with his counsel referencing the sale of one his properties, where he also indicated he would be transferring other properties that he owns in Hawai'i to "a new LLC/Trust," purportedly for purposes of updating his will.  See ECF No. 148.

### i. Preliminary Injunction / Restraining Order

First, because of the briefing schedule the parties' agreed to for this motion and other post-trial motions, see ECF No. 135, the Court is essentially

---

[15] This Order addresses only Plaintiff's amended motion seeking this relief, see ECF No. 134, and presumes Plaintiff's prior-filed motion on these topics is superseded by the later-filed motion, see ECF No. 131.

ruling on this request at or near when judgment will be entered—raising the question of whether these issues are now moot.  However, because Plaintiff has argued it is entitled to such relief pending any appeal, the Court will proceed to address the merits of these requests.  In doing so, however, the Court presumes judgment will be entered soon after the issuance of this Order.[16]

As to Plaintiff's request for a preliminary injunction, Plaintiff has not cited any authority indicating that seeking a *preliminary* injunction is the appropriate mechanism to preserve the status quo after a jury trial where Federal Rule of Civil Procedure 69 and state law provide more specific remedies for enforcing a judgment.  See Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.").[17]  As Defendants note, other courts have recognized that "the ordinary recourse upon securing a money judgment is to look for the remedies available under Federal Rule of Civil

---

[16] This, in turn, presumes Plaintiff will accept remittitur.  If he does not, the Court will address whether Plaintiff will be permitted to renew these requests at a later time.

[17] Plaintiff cites F.T.C. v. Trek All., Inc., 81 F. App'x 118 (9th Cir. 2003), but a review of the underlying district court docket in that matter makes clear the district court issued the preliminary injunction with an asset freeze during the pendency of the case, well before any judgment had been entered.  See F.T.C. v. Trek All., Inc., Civ. No. 02- 09270-DSF-AJWX.

Procedure 69 and state law; it [is] not appropriate to adopt a reading of a post-judgment asset freeze remedy under Rule 65 that would seemingly subsume the remedies provided by Rule 69 and state law." WowWee Grp. Ltd. v. Meirly, 2019 WL 1375470, at *11 (S.D.N.Y. Mar. 27, 2019) (citation omitted); Allstar Mktg. Grp., LLC v. AFACAI, 2021 WL 2555636, at *6 (S.D.N.Y. June 22, 2021) ("[C]ourts regularly have rejected the notion that Rule 65 can be used to circumvent the more specific provisions of Rule 69 that apply to execution of a judgment.").

And more importantly, as the court in WowWee Group noted, the Supreme Court has warned that district courts generally lack authority to issue a preliminary injunction freezing assets where, as here, a plaintiff seeks to recover only money damages and may no longer recover equitable remedies. See 2019 WL 1375470, at *11 (citing Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 333 (1999) ("Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages.")).[18]

---

[18] Plaintiff offers no response to Defendants' argument that his request for injunctive relief is improper under Grupo Mexicano. But one of the cases Plaintiff himself relies on, Johnson v. Couturier, 572 F.3d 1067, 1083-84 (9th Cir.

With regard to Plaintiff's concerns regarding transfers to hide assets or evade Plaintiff's attempt to execute on the judgment, Rule 69 explicitly provides for discovery in aid of the judgment or execution as follows:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2). The discovery contemplated by Rule 69 is intended to aid in identifying assets that can be used to satisfy a judgment, including concealed or fraudulently transferred assets, from both parties and non-parties alike. See Reno-Tahoe Specialty, Inc. v. Mungchi, Inc., 2018 WL 6267820, at *3 (C.D. Cal. Jan. 19, 2018) ("[D]iscovery which delves into a third-party's assets is permissible where the relationship between the judgment debtor and the third-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them.") (citation and alterations omitted). Overall, discovery in postjudgment proceedings is broad and permissive: "[e]ven though Rule 69 discovery may resemble the proverbial fishing expedition, a judgment creditor is *entitled* to fish for assets of the judgment debtor." Textron Fin. Corp. v. Gallegos, 2016 WL 4077505, at *3 (S.D. Cal. Aug. 1, 2016) (citation omitted); see also Erickson Prods., Inc. v. Kast, 769 F. App'x 482, 483–84 (9th Cir. 2019) (unpublished)

---

2009), explicitly noted that the district court's preliminary injunction there was proper under Grupo Mexicano because the plaintiffs in that case were seeking equitable relief—which is no longer available to Plaintiff here.

("[Plaintiff] was entitled to broad post-judgment discovery regarding [defendant's] finances, including his assets held in trust.").  Plaintiff has thus not convincingly shown that the Court has the power to freeze Defendant Merlo's assets (based on Grupo Mexicano) or even if it did, that freezing Defendant Merlo's assets is warranted under Rule 65 based on the remedies provided for under Rule 69.[19]

Nor does the fact that Defendants may file an appeal—and thus further delay the time when Plaintiff may execute on the judgment pursuant to Rule 69—counsel in favor of freezing assets here.  Federal Rule of Civil Procedure 62 provides that, absent a court order to the contrary, execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, but that a party may at any time after entry obtain a stay by providing a bond or other security.  See Fed. R. Civ. P. 62(a), (b).  Thus, filing an appeal does not automatically stay the judgment—although a party is entitled to a stay as a matter of right upon posting a bond or security.  See Mohr v. MLB Sub I, LLC, 2020 WL 3803847, *2 (D. Haw. July 7, 2020).  The purpose of the bond or security addresses Plaintiff's concerns here, i.e., it is intended to protect the prevailing party from the risk of a later uncollectible judgment and to compensate the party for delay in enforcement of the judgment.  See NLRB v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988).

---

[19] Hawai'i law similarly provides for discovery in aid of executing on a judgment.  See Haw. Rev. Stat. § 636-4.

District Courts have discretion in requiring and setting the amount of supersedeas bonds. See Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). The default rule is that the losing party seeking to appeal must provide a *full* supersedeas bond covering the entire amount of the judgment. See Paeste v. Gov't of Guam, 2014 WL 12725108, *3 (D. Guam May 28, 2014). A party seeking a departure from the normal requirement of a full security supersedeas bond bears the burden of showing a sufficient basis for such a departure from the norm. See Lewis v. Cnty. of San Diego, 2018 WL 1071704, *2 (S.D. Cal. Feb. 27, 2018) (listing factors courts evaluate when considering a request to waive supersedeas bond requirement, including the confidence the court has in the availability of funds to pay the judgment). Here, Plaintiff has pointed to no evidence indicating that, should they appeal, Defendants intend to request to stay the judgment without being required to post a full bond pending appeal.

Finally, even assuming Plaintiff can seek relief under Rule 65 here despite the remedies afforded under Rule 69 and Rule 62, and the Court could award such relief despite Grupo Mexicano, Plaintiff has failed to show that an injunction freezing Defendants' assets is warranted under the relevant standard. Pursuant to that standard, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Johnson, 572 F.3d at 1085. At trial, the parties

40

stipulated to Defendant Merlo's then-current assets, which significantly exceed the total amount of damages Plaintiff is entitled to here.  Further, as Defendants note in opposition, with regard to the sale of the property referenced, there is "no evidence that the property was fraudulently conveyed; that the proceeds of the sale were less than the value of the property; [or] that the proceeds have been removed from possible collection[.]"  ECF No. 143 at 2.

Thus, based only on the evidence before the Court that Defendant Merlo sold one property and transferred other properties to an LLC or trust, Plaintiff has not met his burden of demonstrating he will be unable to recover the full amount of damages he is entitled to under the judgment absent an asset freeze.[20]  And based on this lack of showing, neither the balance of equities nor public interest favor the extreme remedy of freezing all of Defendants' assets when Plaintiff at most has a claim to a relatively small percentage of those assets, and to no asset in particular.

The Court therefore DENIES Plaintiff's request for a preliminary injunction or restraining order freezing Defendants' assets.

---

[20] The Court would reach the same conclusion even assuming Plaintiff were entitled to the full amount of damages he contends he is entitled to, i.e., all those that the jury awarded.

## ii. Receiver and Transfer of Assets

Plaintiff also requests that the Court appoint a receiver pursuant to Rule 66 and direct that certain third parties turn over frozen assets to the receiver, so as to maintain the status quo pending entry of a final judgment.  Again, based on the agreed-upon briefing scheduling, the Court is ruling on this request close to when judgment may be entered in this matter.  But even assuming potential delay in executing on the judgment based on an appeal or because Plaintiff declines the remittitur, the Court finds Plaintiff has not shown this relief is necessary or appropriate here.

"[F]ederal law governs the issue of whether to appoint a receiver in a diversity action." Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 843 (9th Cir. 2009).  "Under federal law, appointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." Id. (quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993)).  "However, there is no precise formula for determining when a receiver may be appointed." Id. (citation omitted).  Federal courts consider facts such as:

> (1) "whether [the party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and,

(7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership."

Id. (citations omitted).  While Plaintiff has demonstrated the validity of his claims and actual success in the action, which included proof of fraud, none of the other factors above counsel strongly in favor of appointing a receiver here.  As noted above, Plaintiff's request is based on the sale of one property and the transfer of other properties into an LLC or trust.  However, there is insufficient evidence at this time for the Court to conclude that the extraordinary remedy of a receivership is appropriate where—as Plaintiff is well-aware based on Defendant Merlo's forthcoming disclosure during trial—there appear to be sufficient other assets to satisfy the judgment.  For example, Plaintiff has not provided any evidence that the property sold or transferred amounts to a high portion of the assets stipulated to at trial or, as noted above, that the proceeds from the sale or transferred properties would not be subject to collection.

Plaintiff's reliance on Bruser v. Bank of Hawaii, 2019 WL 497615, at *6 (D. Haw. Feb. 7, 2019) is also not persuasive.  There, the district court noted that the defendants had "both failed to satisfy the amounts owed under the Judgment and abide by its terms *for over two years*."  Id. (emphasis added).  There has been no similar failure to satisfy the judgment and abide by its terms for a lengthy period here such that the Court could conclude that appointing a receiver is warranted at this early juncture.  See Aviation Supply Corp., 999 F.2d at 317

43

(noting the normal remedies available to a judgment creditor were insufficient and the district court was "within its discretion in turning to a *drastic remedy* such as a receiver" where there was a pattern of willful nondisclosure and false disclosure during the Rule 69 discovery process, followed by transfers of assets) (emphasis added).

The Court therefore DENIES Plaintiff's request for a receiver and the accompanying request for a transfer of assets.

**B. Prejudgment Interest**

Plaintiff also moves for an award of prejudgment interest in the amount of $362,957.52.  See ECF No. 141-3 (citing Metcalf v. Voluntary Employees' Ben. Ass'n of Hawaii, 99 Haw. 53, 61, 52 P.3d 823, 831 (2002)).[21] "In diversity actions, state law determines the rate of prejudgment interest[.]" Am. Tel. & Tel. Co. v. United Computer Sys., Inc., 98 F.3d 1206, 1209 (9th Cir. 1996). Under Hawaiʻi law, "[p]re-judgment interest is designed to allow the court to designate the commencement date of interest in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." Metcalf, 99 Haw. at 61, 52 P.3d at 831 (citation omitted).  The statutory

---

[21] Within the same filing, Plaintiff moved for an award of attorney's fees.  See ECF No. 141.  The Court denied that portion of Plaintiff's request without prejudice to Plaintiff filing a renewed motion that complied with Local Rule 54.2.  See ECF No. 146.

basis for prejudgment interest is HRS § 636–16, which affords a court discretion to
award prejudgment interest and

> to designate the commencement date to conform with the
> circumstances of each case, provided that the earliest commencement
> date in cases arising in tort, may be the date when the injury first
> occurred and in cases arising by breach of contract, it may be the date
> when the breach first occurred.

Haw. Rev. Stat. § 636–16.  Generally, there must be a showing that "the issuance
of judgment is *greatly delayed* for any reason."  <u>Cnty. of Hawai`i v. C & J Coupe</u>
<u>Fam. Ltd. P'ship</u>, 120 Haw. 400, 410, 208 P.3d 713, 723, <u>as amended</u> (May 22,
2009), <u>opinion</u> <u>amended</u> <u>on</u> <u>reconsideration</u> <u>sub</u> <u>nom.</u> <u>Cnty. of Hawai'i v. C&J</u>
<u>Coupe Fam. Ltd. P'ship</u>, 120 Haw. 399, 208 P.3d 277 (2009) (citation omitted);
<u>see</u> <u>also</u> <u>Cty. of Hawaii v. C & J Coupe Family Ltd. P'ship</u>, 124 Haw. 281, 312,
242 P.3d 1136, 1167 (2010)("a trial court can award prejudgment interest for *any*
*substantial delay* in the proceedings") (citation omitted).

Plaintiff filed this action in April 2020, the jury reached its verdict in
May 2022, and judgment may be entered soon after the issuance of an order in
August 2022.  Plaintiff appears to argue an award of prejudgment interest is
appropriate here because Plaintiff made reasonable settlement demands of
$500,000 or less, but instead of being willing to negotiate, Defendants "denied any
liability and thereafter frustrated the discovery process by causing unnecessary
delay, intentionally asserting meritless objections to document requests and

interrogatories, withholding pertinent discovery, and feigning computer difficulties to delay Defendants' deposition."  ECF No. 141-1 ¶ 6; see also id. ¶ 8 (contending Defendants' refusal to discuss settlement prolonged the litigation).  Plaintiff cites the Court to no specific examples from the record to support his contention that judgment has been greatly delayed for these reasons.

Discovery disputes brought to the Court's attention were limited in nature.  See, e.g., ECF No. 26 (ruling in both parties' favors during expedited discovery procedure under Local Rule 37.1(c)).  The parties also agreed to continue the trial date.  See ECF Nos. 30, 50.  While Defendants' issues with document production and need to retain new counsel contributed to these continuances, so too did delays caused by the pandemic.  See ECF Nos. 30, 50.  Regardless, the continuances were not so lengthy to say judgment was *significantly* delayed as a result.  While Plaintiff also faults Defendants' settlement position, the Court does not find that justifies an award of prejudgment interest here, as Defendants had a right to contest the claims on the merits and, further, Plaintiff has not shown how that position caused substantial delay in the proceedings.

Although Plaintiff seeks prejudgment interest dating back to 2015, he only filed this action in April 2020—and has not articulated in his motion how Defendants caused any delay during this period; instead, he focuses only on Defendants' conduct throughout this litigation.  See ECF No. 141-1 ¶¶ 6, 8; ECF

No. 141-4; see also ECF No. 141-3 (justifying the requested amount of interest, but not providing argument in support of the Court exercising its discretion to award it here).  Based on the arguments in Plaintiff's motion, the Court cannot find that judgment being entered less than two and a half years after Plaintiff commenced this action—at the onset of the pandemic nonetheless—amounts to a great delay.  See Philadelphia Indem. Ins. Co. v. Ohana Control Sys., Inc., 2020 WL 2025351, at *8 (D. Haw. Apr. 27, 2020) (finding, on that record, that a wait of less than three years for issuance of judgment did not constitute a "substantial delay" and citing cases in accord).

For these reasons, the Court DENIES Plaintiff's request for an award of prejudgment interest.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendants' requests for remittitur or a new trial as to the jury's awards of contract damages and punitive damages.  The Court also DENIES Plaintiff's requests for a preliminary injunction and restraining order, the appointment of a receiver and corresponding transfer of assets, and for prejudgment interest.  However, the Court GRANTS Defendants' request that the Court order remittitur or alternatively a new trial with regard to the compensatory damages the jury awarded as follows:  the Court orders remittitur in the amount of $1,180,000 in compensatory damages or, alternatively,

grants Plaintiff leave to request a new trial as to damages. **Plaintiff is directed to respond to this Order within seven days informing the Court of his decision.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, AUGUST 30, 2022.



_____

Wes Reber Porter
United States Magistrate Judge